UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

Case No. 8-15-72381-reg

MANJINDER SINGH,

Chapter 7

                      Debtor.
-----------------------------------------------------------------x
ALLAN B. MENDELSOHN,

                      Plaintiff,
     - against -                            Adv. Proc. No. 8-16-08036-reg

MANJINDER SINGH,

                      Defendant.
-----------------------------------------------------------------x


## MEMORANDUM DECISION

       This matter is before the Court pursuant to an adversary proceeding commenced by Allan

Mendelsohn, the Chapter 7 Trustee (the "Trustee") against Manjinder Singh (the "Debtor")

seeking, *inter alia,* to deny the Debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(2)(A),

(a)(2)(B), (a)(3), (a)(4)(A), and (a)(4)(D).  The Trustee argues that the Debtor's initial failure to

disclose his one-third ownership interest in Preet Gourmet, Inc. ("Preet Gourmet"), a pizza-by-

the-slice restaurant, as well as the Debtor's uncooperative conduct in failing to produce records

which would allow the Trustee to determine the value of the Debtor's interest in Preet Gourmet

warrant a denial of discharge.  This Court agrees with the Trustee that the Debtor's actions and

course of conduct, commencing with the filing of the petition and schedules, rise to the level

where it is appropriate to deny his discharge.  The Debtor failed to provide any meaningful

justification for his conduct, which included disregarding a Rule 2004 subpoena seeking

evidence of the finances of Preet Gourmet so that the Trustee could properly value the Debtor's

interest in the company.  A bankruptcy discharge is a privilege and should only be granted to the

honest debtor seeking a fresh start.  A debtor who fails to include a significant asset in his

schedules, and otherwise acts in a manner designed to frustrate the efforts of the Trustee to

administer the debtor's estate for the benefit of creditors will be denied his discharge.

## PROCEDURAL HISTORY

The Debtor filed a voluntary petition ("Petition") for relief under chapter 7 of the

Bankruptcy Code on June 6, 2015 ("Petition Date").  On March 14, 2016, the Trustee filed this

complaint objecting to discharge pursuant to 11 U.S.C. §§727(a)(2)(A), (a)(2)(B), (a)(3),

(a)(4)(A), and (a)(4)(D).  An answer was filed by the Debtor on April 20, 2016.  A pretrial order

was entered and the parties engaged in discovery.  On October 24, 2016, the Court entered an

order scheduling a trial date for February 7, 2017.  On that same date, the Debtor filed a motion

to compel the Trustee to respond to interrogatories, which motion was subsequently denied.  The

parties submitted a "Joint" Pre-Trial Memorandum on February 1, 2017.

A few days before the trial, on February 3, 2017, the Debtor's counsel filed a letter

advising the Court that the Debtor "may not be able to provide a coherent or a sound testimony,

responses to question etc. owing to his state of mind."[1]  (ECF No. 22).  Despite advising the

Court that the Debtor may not be able to testify due to his state of mind, counsel's letter went on

further to demand that the Trustee, or alternatively, the Court, provide an interpreter for the

Debtor to testify at trial because the Debtor "is not versed with English language." (ECF No. 22).

Ultimately, the Debtor's counsel abandoned the notion that the Court should provide an

---

[1]    Although the nature of the Debtor's infirmities was never borne out at trial or by any admissible
evidence, counsel's statements in this letter are consistent with statements he made in the Joint Pre-Trial
Memorandum regarding the Debtor's mental state: "The [Debtor] has serious psychological issues
including loss of memory, Attention Deficiency Disorder, etc." (ECF No. 21 at 6); and "[The Debtor]
went through a serious depression and his state of mind, suffering from severe Attention Deficiency
Disorder" [sic] got exacerbated."  (ECF No. 21 at 9-10).

interpreter, but he persisted in his argument that the Trustee was required to provide an interpreter pursuant to the Court Interpreters Act, 28 U.S.C. §§1827-1828 (2006).

A trial was held on February 7, 2017.  Although the Trustee stated his intention to call the Debtor as a witness in the Joint Pre-trial Memorandum, he did not call the Debtor to testify.  Nor did the Debtor's counsel seek to elicit the Debtor's testimony at trial.  The Court determined that because neither party was going to call the Debtor as a witness, the interpreter issue was moot. [2] The Trustee and the Debtor stipulated to certain exhibits which were entered into evidence.  The Debtor's deposition pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("2004 Examination") was entered into evidence over the Debtor's objection.[3]  Finally, the Debtor made

---

[2]    Even if the issue was not moot, the Court finds that it was neither the Court's nor the Trustee's responsibility to provide an interpreter for the Debtor to testify at trial in his own defense.  The Court Interpreters Act provides that:

> The presiding judicial officer, with the assistance of the Director of the Administrative Office of the United States Courts, shall utilize the services of the most available certified interpreter, or when no certified interpreter is reasonably available, as determined by the presiding judicial officer, the services of an otherwise qualified interpreter, *in judicial proceedings instituted by the United States*, if the presiding judicial officer determines on such officer's own motion or on the motion of a party that such party (including a defendant in a criminal case), or a witness who may present testimony in such judicial proceedings – (A) speaks only or primarily a language other than the English language. . . .

28 U.S.C. §1827(d)(1) (emphasis added); *see also* Guide to Judiciary Policy, Vol. 5 §240.10 (the parties are responsible for providing an interpreter for court proceedings "except in very limited instances: (1) when the bankruptcy proceedings are institute by the United States or (2) when the parties have a hearing impairment . . .)  However, this adversary proceeding, brought by the chapter 7 trustee, is not a "judicial proceeding instituted by the United States."  A private panel trustee, although appointed and supervised by the Office of the United States Trustee, is not an agent employee or officer of the United States.  *See* 28 U.S.C. §586(a).  Furthermore, courts have interpreted the Court Interpreters Act narrowly in civil cases, finding that the requirements of due process are more limited than those rights of defendants in criminal cases.  *See In re Morrison,* 22 B.R. 969, 969 (Bankr. N.D. Ohio 1982) (finding that the filing of the bankruptcy case did not constitute an initiation of a proceeding by the United States and thus denying the debtors' request for an interpreter at their 341 meeting).  The Court also finds that the request for an interpreter was untimely as Debtor's counsel had ample notice of the trial date and yet chose to raise this issue two business days before trial.

[3]    The Debtor did have an interpreter at the 2004 Examination.  However, the Debtor's counsel argued that the deposition transcript should not be admitted at trial because he claims the Debtor was not given ample time to review and edit his testimony.  *See* Fed. R. Bankr. P. 7030(e).  The Court overruled that objection.  The Rule 2004 Examination took place on September 12, 2016.  On September 23, 2016

an oral application for a directed verdict at the close of the Trustee's case which application was denied. The parties were offered an opportunity to submit post-trial memoranda, however none were submitted. Thereafter, the adversary proceeding was marked submitted.

## FACTS

The Debtor filed the Petition with the assistance of legal counsel. This is the Debtor's second bankruptcy filing. The first was filed on June 9, 2014. (Case No. 8-14-72655.) It was automatically dismissed on July 31, 2014 for failure to provide Official Form B22A, which is necessary under 11 U.S.C. §521(i)(1). (Case No. 8-14-72655, ECF No. 14.)

Besides adding a few unsecured creditors, the schedules filed in the instant case contain the same information as the schedules filed with the first bankruptcy petition. The Debtor's interest in Preet Gourmet was not disclosed in either petition. The Trustee first became aware of the Debtor's interest in Preet Gourmet at the meeting of the creditors pursuant to 11 U.S.C. §341 ("341 Meeting") (Plaintiff Ex. 3.) After the 341 Meeting the Trustee sent a letter ("First Letter") to Debtor's counsel, dated August 6, 2015, advising the Debtor's counsel of several inaccuracies in the petition and schedules. *Id.* The First Letter noted that: the Debtor had not disclosed the prior bankruptcy case in the current petition; the Debtor failed to disclose on Schedule B and the

---

the transcript was forwarded to Debtor's counsel to review for accuracy. (ECF No. 15, Ex. D.) Although the Trustee requested the signed transcript back from the Debtor within 14 days, it appears that the Debtor never reviewed the transcript for accuracy and never signed it. Counsel chose instead to argue that he should have been given 30 days instead of 14 days to review it. The argument is unpersuasive because despite the Trustee's 14 day request, trial was held more than four months after the transcripts were forwarded to the Debtor. Furthermore, unsigned transcripts are admissible. *See Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP,* 163 F. Supp. 3d 109, 116 (S.D.N.Y. 2016) (finding that because the deponent submitted his errata sheet late, he waived his right to alter his deposition transcript); *Dore v. Wormley*, 690 F. Supp. 2d 176, 178 (S.D.N.Y. 2010) (admitting the deposition transcript over the deponent-defendant's objections because the objection was untimely and no errata sheet was provided after the deposition was publicly docketed); *CSC Holdings, Inc. v. Alberto*, 379 F. Supp. 2d 490, 493 (S.D.N.Y. 2005) (interpreting the Second Circuit's decision in *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 99 (2d Cir. 1997), as allowing courts to consider unsigned original transcripts as admissible evidence because the statements therein are admissions by a party and thus an exception to hearsay).

Statement of Financial Affairs, Question 18, his ownership interest in Petroleum Ray's Inc. and Preet Gourmet, Inc., both sub chapter S corporations, which only came to the Trustee's attention after Debtor's counsel provided the Trustee with the Debtor's 2013 tax return; and although Question 1 of the Statement of Financial Affairs asks for current year to date income and income for the two years prior to the Petition Date, the Debtor provided income only for 2011 and failed to mention 2013 and 2014. *Id.* The Trustee advised Debtor's counsel at that time to "carefully review the petition, make any and all necessary changes, and forward a copy of the amended petition" to him in advance of the adjourned 341 Meeting. *Id.* The Trustee also requested at that time copies of corporate tax returns for all entities in which the Debtor owns an interest. *Id.* About a month later, on September 8, 2015, the Trustee sent Debtor's counsel another letter ("Second Letter") indicating that the schedules had not been amended as requested nor had the Trustee received any of the requested documents. (Plaintiff Ex. 4.)

On September 18, 2015, the Debtor filed amended schedules ("Amended Schedules") that listed the Debtor's interest in Preet Gourmet. (Plaintiff Ex. 1.) The Debtor added his interest in a life insurance policy valued at $9,000 and claimed it as exempt. (*Id.* at Official Form B7.) The Debtor also added an interest in Petroleum Rays's Inc., a gas station that is allegedly closed. *Id.* Question 1 of the Statement of Financial Affairs was amended to show $24,800 income from employment at Preet Gourmet for 2013, and $28,000 income for 2014 indicating the source of the income as "2014 Tax filing is on extension." (Amended Statement of Financial Affairs question 1, ECF No. 23.) The original Statement of Financial Affairs listed $43,459 income from "Jobs as mentioned in Schedule J," and $65,250 income from "2011 Jobs." (Statement of Financial Affairs question 1, ECF No. 9.) Those entries were deleted from the amended filing which makes no mention of 2015 year to date income. On November 4, 2015 the Trustee filed a

motion pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("2004 Motion") to examine the Debtor and to subpoena certain financial documents "in order for Trustee to discharge his obligation as a fiduciary to all creditors and determine if Debtor's interest in Preet is a marketable asset that could potentially be reduced to cash for the benefit of creditors of the estate." (2004 Motion, ECF No. 26, ¶6.) The 2004 Motion was granted on November 9, 2015. ("2004 Order", Plaintiff Ex. 5.)

The Debtor failed to comply with the Rule 2004 subpoena and on January 8, 2016, the Trustee sent the Debtor's counsel yet another letter ("Third Letter") requesting the documents. (Plaintiff Ex. 6.) After three extensions of time for the Trustee to commence a Section 727 action against the Debtor, on March 14, 2016, the Trustee filed the instant adversary proceeding seeking to deny the Debtor's discharge.

The Debtor testified at his 2004 Examination on September 12, 2016. (Plaintiff Ex. 9 ("Depo. Tr.")). An interpreter was provided for the Debtor. The Debtor testified that he knew he filed bankruptcy. (Depo. Tr. at 6.) The Debtor claimed his English is limited and he did not understand exactly what filing for bankruptcy meant. *Id.* He admitted he did not know what signing the petition under penalty of perjury meant either. (Depo. Tr. at. 10.) But he knew that the information provided within the Petition was true and correct. *Id.* The Debtor, with the guidance of his bankruptcy counsel, executed the necessary papers some time before the Petition was filed. The Debtor testified that he provided his counsel with all the answers to the questions in the Petition, (Depo. Tr. at 37), and there was no one else at the meeting between the Debtor and Debtor's counsel. *Id.* At trial, the Court asked Debtor's counsel how he communicates with the Debtor. (Court Recording at 10:15:18 am). Counsel responded "I talk to him in Hindi." *Id.*

At the 2004 Examination, the Trustee inquired about Preet Gourmet and how the business was operated.  The Debtor testified that he owns a thirty-three percent interest in Preet Gourmet and has held that interest throughout the entirety of this bankruptcy.  (Depo. Tr. at 14 and 23.)  The business is important to the Debtor.  (Depo. Tr. at. 42.)  The Debtor runs the business of Preet Gourmet.[4]  (Depo. Tr. 23.)  It is a cash-only business that sells pizza-by-the-slice and fountain drinks. (Depo. Tr. at 29.)  Preet Gourmet has an arrangement with Ruby and Son, a supplier that provides the products necessary to run a pizza business.  (Depo. Tr. at 26.)  Using profits from the sales of its pizza, Preet Gourmet would pay Ruby and Son cash the week after the supplies were delivered.  *Id.*  Preet Gourmet only accepts cash from its customers and has no system of recording its income or expenses.  *Id.*  The Debtor testified that on a daily basis, no one would record any income.  *Id.* at 27.  Occasionally, one of the Debtor's brothers or perhaps the Debtor's sons would deposit cash into the company's checking account.  *Id.*  The Debtor testified that he and his sons would make sure that there was always enough money in the bank account to pay Preet's expenses, which were minimal.  *Id.* at 27-28.  The Debtor was not the only one who had access to the register; sometimes his children would take care of depositing the money into the bank account.  *Id.*  Preet Gourmet would pay New York Sales Tax quarterly, but the Debtor stated his accountant would take care of "it."  (Depo. Tr. at 28.)  Preet Gourmet leases its space in the Bronx, and until recently, has been current with paying its rent, which is approximately $4,000 a month.  (Depo. Tr. at 25.)

The Trustee requested documents evidencing the business' financial condition on many occasions prior to the 2004 Examination.  The Rule 2004 subpoena requested copies of the

---

[4]    Schedule I of the Petition indicates the Debtor's occupation is a cook and the Debtor's employer's name is "Golden Pizza." The address listed is the same address for Preet Gourmet.  The Debtor's testimony in the 2004 Examination confirms that he works at, and derives his income from, Preet Gourmet.

following documents related to Preet Gourmet:  the corporate "kit"; shareholders agreement; federal tax returns for 2010 to present; lease agreements; and bank statements for January 2010 to present.  (Defendant Ex. I.)  It was only after the Trustee commenced this adversary proceeding that the Debtor turned over Preet Gourmet's Federal Tax Returns from 2010 through 2015 and Preet Gourmet's monthly bank statements from January 2015 through January 2016. The Debtor's Federal Tax Returns from years 2012, 2013, 2015, State Tax Returns from 2015, and W-2s from Preet Gourmet for the Debtor for the year of 2015 were also provided to the Trustee. [5]

## DISCUSSION

### Denial of Discharge under 11 U.S.C. §727

It is well-settled that the denial of a debtor's discharge is a drastic remedy that must be construed strictly in favor of the debtor.  *State Bank of India v. Prasad Chalasani et al. (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir. 1996); *D.A.N. Joint Venture, et al. v. Stephen A. Cacioli (In re Cacioli)*, 463 F.3d 229, 234 (2d Cir. 2006).  However, a discharge under section 727 is a privilege, not a right, and may only be granted to the honest debtor.  *Congress Talcott Corp. v. Anthony Sicari (In re Sicari)*, 187 B.R. 861, 880 (Bankr. S.D.N.Y. 1994).  The plaintiff bears the

---

[5]     The Court is giving the Debtor the benefit of the doubt here.  The Trustee only introduced Preet Gourmet's bank statements, Preet Gourmet's Federal Tax Returns for 2015 and the Debtor's Federal Tax Returns for 2015 into evidence at the Trial, but it is not clear whether that is all the Trustee received from the Debtor.  The Debtor's exhibits, which were admitted without objection, include: Preet's tax returns for 2010 through 2015 (Defendant Ex. E); the Debtor's Federal Tax Returns from years 2012, 2013, 2015, State Tax Returns from 2015, and W-2s from Preet Gourmet for the Debtor for the year of 2015 (Defendant Ex. F); various email exchanges between the Trustee and Debtor's counsel which indicate production of tax documents for 2013 and 2014 and a certificate of incorporation, as attachments in .pdf format. (Defendant Ex. H.)  These email exchanges occurred in April 2016 and June 2016 after the commencement of this adversary proceeding.  Although the Trustee maintained in the Joint Pre-Trial Memorandum that the Debtor failed or refused to produce all of the documents sought pursuant to the Rule 2004 subpoena, he does not clearly state what he did and did not receive.  The Court will give the Debtor the benefit of the doubt and assume that the documents in the Debtor's exhibits were turned over to the Trustee in or around April or June of 2016.

burden of establishing each of the elements of section 727 by a preponderance of the evidence.

*See Minsky v. Silverstein (In re Silverstein)*, 151 B.R. 657, 660 (Bankr. E.D.N.Y. 1993); *see also*

Fed. R. Bankr. P. 4005.

### A) Denial of Discharge under 11 U.S.C. § 727(a)(4)(A)

11 U.S.C. § 727(a)(4)(A) provides:

> The court shall grant the debtor a discharge, unless –
> > (4) the debtor knowingly and fraudulently, in or in connection with the case –
> > (A) made a false oath or account

Under this section, the Plaintiff must prove by a preponderance of the evidence that: (1)

the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the

statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the

statement related materially to the bankruptcy case.  *Carlucci & Legum v. Murray (In re*

*Murray)*, 249 B.R. 223, 228 (E.D.N.Y. 2000).  The plain language of the statute provides that a

single false oath or account is sufficient to deny a debtor's discharge.  *TD Bank v. Nazzaro (In re*

*Nazzaro)*, Adv. Proc. No. 10-8500, 2013 WL 145627, *7 (Bankr. E.D.N.Y. 2013) (collecting

cases).  The statute is designed to ensure complete, truthful, and reliable information at the outset

of the proceedings, so that decisions can be made by the parties based on fact.  *Id.*

The false oath must be made with fraudulent intent.  *Nazzaro,* 2013 WL 145627 at *7.

Fraudulent intent may be inferred from the circumstances of the case, which includes the

debtor's conduct.  *See Richard E. O'Connell v. DeMartino (In re DeMartino)*, 448 B.R. 122, 128

(Bankr. E.D.N.Y. 2011) (collecting cases discussing how fraudulent intent may be inferred from

all the facts and circumstances of the case).  If the debtor is found to have exhibited a reckless

indifference to the truth, then that may establish intent sufficient to deny the discharge.  *Id.*  A

series of misstatements in the petition and schedules can amount to a reckless disregard for the

truth, which the Second Circuit equates with actual fraud.  *See Darwin Spaulding Living Trust v. Carl (In re Carl)*, 517 B.R. 53, 69 (Bankr. N.D.N.Y. 2014).

The Debtor made a false oath.  The Petition was filed under penalty of perjury which is equivalent to an oath.  *In re Carl*, 517 B.R. at 69.  The Debtor testified in his 2004 Examination that he knew he filed bankruptcy and that the statements in the petition were true and accurate, yet he did not disclose his thirty-three percent interest in Preet Gourmet in the schedules as initially filed.  The Debtor's Amended Schedules also show that in his original petition he failed to disclose a $9,000 life insurance policy and his interest in Petroleum Ray's.  The Amended Statement of Financial Affairs also show a discrepancy in the income from employment or operation of business: in the originally filed petition the Debtor lists: $43,459 for "jobs as mentioned in Schedule J."  The record is not clear as to what year this income should be attributed, or why it was omitted from the Amended Statement of Financial Affairs.  The record is clear, however, that the Debtor failed to include in his amendment, 2015 year to date income as is required by the Statement of Financial Affairs.

These omissions are not trivial and the Court finds that the Debtor's actions here exhibit a reckless indifference to the truth.  First, the Debtor works at and derives his income from Preet Gourmet.  Preet Gourmet is not a defunct or non-operating shell corporation, nor is his involvement in Preet Gourmet so remote that it would be reasonable to find that his failure to list his ownership interest could have been an innocent omission.  The 2015 federal tax return for Preet Gourmet shows that the gross receipts for the business are not insignificant ($216,579) (Plaintiff Ex. 8 at 194), and the corporation issued a $5,857 dividend to the Debtor on account of his one-third interest.  Moreover, the return was prepared for signature by the Debtor as "President" of Preet Gourmet.

The Court finds it unreasonable to omit an ownership interest in a business in which the Debtor is a part owner and from which the Debtor derives his income.  This is an asset that is clearly central to understanding the scope of the Debtor's finances.  The Debtor not only omitted his interest in Preet Gourmet, but also omitted his interest in a life insurance policy and an interest in another corporation, as is evidenced by the Amended Schedules.  The amendments the Debtor made do not rectify these omissions, especially where the amendments were only filed after the Trustee asked for production of documents and the amendments twice, and threatened to take action for these failure.  *Vincent Moreo v. Frank Rossi, Jr. (In re Moreo)*, 437 B.R. 40, 62 (E.D.N.Y. 2010) (a false statement is not cured by amending schedules, even if they are amended before an objection to discharge is filed).  Furthermore, the Debtor failed to list his 2013 and 2014 income on the original petition.  The Amended Statement of Financial Affairs, while it does provide this information, raises additional questions by failing to mention the $43,459 income from "Jobs as mentioned in schedule J" as originally reported, or make any mention of 2015 year to date income.

The Debtor's counsel has asserted, but it has not been proven, that the Debtor's language barrier and his alleged fragile mental state may have contributed to his failures in this case.  First, neither of these assertions has been proven.  Second, the Debtor was represented at all times by experienced bankruptcy counsel who, according to Debtor's counsel, is able to communicate with the Debtor in his native language and was capable of providing legal counsel to the Debtor as to his obligations to disclose all property interests in the petition.  *See Hyun Suk Cho v. Seung Chan Park (In re Seung Chan Park),* 480 B.R. 627, 635 (Bankr. D. Md. 2012) (noting that while language obstacles may be significant, it is not an excuse to fail to produce full and complete

responses and inhibit the free-flow of information in the bankruptcy system).  *But see Kip Kaler v. Dam Huynh (In re Huynh),* 392 B.R. 802, 813 (Bankr. D.N.D. 2008).

The totality of the Debtor's failures in this case show a reckless indifference for the truth, and thus the Court finds the Debtor's omissions from his schedules to be knowing and fraudulent.  *See In re Nazzaro,* 2013 WL 145627 at *7 (denying discharge where debtor omitted a single asset because of his belief that the asset was valueless).  The Debtor has failed to provide any satisfactory explanation for his omissions.  For these reasons, the Debtor's discharge shall be denied pursuant to §727(a)(4)(A).

### B)  Denial of Discharge under 11 U.S.C. §727(a)(4)(D)

11 U.S.C. § 727(a)(4)(D) provides:

> The court shall grant the debtor a discharge, unless –
>
> > (4) the debtor knowingly and fraudulently, in or in connection with the case –
> > (D) withheld from an officer of the estate entitled to possession under this title any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs.

Courts have interpreted this section as imposing an affirmative duty on the debtor to cooperate with the trustee by producing all documents that the trustee requests.  Failure to do so would constitute grounds for a denial of discharge.  *Thaler v. Michael F. Erdheim (In re Erdheim)*, 197 B.R. 23, 28 (Bankr. E.D.N.Y. 1996); *Pereira v. Gardner (In re Gardner)*, 384 B.R. 654, 668 (Bankr. S.D.N.Y. 2008); *Melissa Zelen Neier v. Richard H. Friedberg (In re Friedberg),* 516 B.R. 205, 212 (Bankr. D. Conn. 2014) (denying debtor's discharge for failure to respond to Trustee's inquiries or produce any documents pertaining to debtor's ownership interests in LLCs, even after 2004 subpoena issued).  This section requires a finding of intent.  *Id.*  However, intent may be presumed based upon the circumstantial evidence including the debtor's conduct.  *Gardner,* 384 B.R. at 668.  Courts have found "knowingly and fraudulently"

may be established by the debtor's evasive or persistently uncooperative conduct. *In re Erdheim*, 197 B.R. at 29; *see also John S. Pereira v. Ginger Young (In re Young),* 346 B.R. 597, 615-616 (Bankr. E.D.N.Y 2006) (collecting cases discussing circumstances necessary to prove the requisite intent of "knowingly and fraudulently" under §727(a)(4)(D)).

The record in this case shows that the Debtor failed to produce all of the documents requested by the Trustee in the Rule 2004 subpoena, which documents were necessary to aid the Trustee's efforts to ascertain the value of the Debtor's interest in Preet Gourmet. (Defendant Ex. I.)  The documents he did produce were produced late, only after this adversary proceeding was commenced.  At trial, the Debtor had the opportunity but did not explain his failure.

The Court already has found that the Debtor's failure to include his interest in Preet Gourmet on his petition and schedules was done knowingly and fraudulently.  The record in this case also supports a finding that the Debtor's failure to turn over documents to the Trustee in a timely manner obstructed the Trustee in his efforts, on behalf of the estate, to determine the value of the Debtor's interest in property.  Absent any explanation, the Court also finds that the Debtor's failure to produce to the Trustee, in a timely manner, books and records related to Preet Gourmet was done knowingly and fraudulently by the Debtor.  The Debtor's knowing and fraudulent intent is supported by the totality of the facts in this case, including the Debtor's persistent and uncooperative conduct in responding to the Trustee's requests and his failure to disclose his interest in Preet Gourmet in his petition and schedules when originally filed.  It was only after repeated requests from the Trustee, as evidenced by the stipulated extensions of time to object to discharge, emails, letters, and the subpoena issued pursuant to the 2004 Order, that the Debtor produced tax returns of Preet Gourmet, but no shareholder agreement, or lease agreement.  The Debtor's own exhibit, Exhibit H, shows that the Debtor did not begin to turn

over a majority of the documents requested by the Trustee until April 2016, nearly one year post-petition and only after this adversary proceeding was filed. The admissible evidence in this case is barren of any proof of mitigating factors that would permit the Court to find anything other than that the Debtor's dilatory conduct in producing complete documents to the Trustee, was done knowingly and fraudulently and intended to prevent the Trustee from ascertaining the true nature of the Debtor's interests in property, including Preet Gourmet.

Therefore, the Court will deny the Debtor's discharge pursuant to §727(a)(4)(D).

### C) Denial of Discharge under 11 U.S.C. § 727(a)(3)

The Trustee also seeks to deny the Debtor's discharge pursuant to §727(a)(3). Section 727(a)(3) provides:

> The court shall grant the debtor a discharge, unless –
>
>> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case; . . .

This provision ensures that the privilege of discharge is dependent on a true presentation of the debtor's financial affairs. *Bordonaro v. Fidos Fences (In re Bordonaro),* 565 B.R. 222, 231 (E.D.N.Y. 2017). A "two-step approach" is required under this section. *Id.* First, the plaintiff must show by a preponderance of the evidence that the debtor failed to keep and preserve books or records from which the debtor's financial condition or business transactions might be ascertained. *Id.* (citing *In re Cacioli,* 463 F.3d at 234). The plaintiff must also show that this failure renders it impossible to discern the debtor's true financial condition. *State Bank of India, v. Sethi, (In re Sethi),* 250 B.R. 831, 838 (Bankr. E.D.N.Y. 2000). The Court asks whether there is available written evidence made and preserved from which the debtor's present financial condition, and his recent business transactions for a reasonable period in the past, may

14

be ascertained with substantial completeness and accuracy. *In re Bordonaro,* 565 B.R. at 231 (citing *In re Sethi,* 250 B.R. at 838). This prong may be established by a showing that the debtor's records are inadequate or that it is impossible to ascertain the financial condition from the financial records that have been tendered. *In re Sethi,* 250 B.R. at 837-38. An intent to conceal one's financial information is not necessary to support a denial of discharge under §727(c)(3). *In re Sethi,* 250 B.R. at 838.

Once the first step is shown, the burden falls upon the debtor to satisfy the Court that his failure to keep or preserve the documents was justified. *In re Bordonaro,* 565 B.R. at 231. The Court considers subjective factors when making this determination, including the "education, experience and sophistication of the debtor; the volume of the debtor's business, the complexity of the debtor's business; the amount of credit extended to the debtor in his business; and any other circumstances that should be considered in the interest of justice." *Id.*

The Trustee has satisfied his burden in this case of proving that the Debtor failed to keep or preserve information from which the Debtor's financial condition or business transactions could be ascertained. First, the only documentary evidence offered by the Debtor to support the value of his interest in Preet Gourmet is its' Federal Tax Returns, and one year of Preet Gourmet's monthly bank statements: January 2015 through January 2016. Absent from the documents turned over by the Debtor is evidence to support Preet Gourmet's gross revenues and shareholder distributions (of which the Debtor was a beneficiary) that would enable the Trustee to determine the value of the Debtor's interest in Preet Gourmet. Tax returns and one year of bank statements is of limited usefulness in providing a basis to value a business enterprise, especially a cash business. It appears from the record that the Debtor is an active part owner of Preet Gourmet, a closely-held corporation, and to a large degree his personal "financial

15

condition" is rooted in the value of that company.  It is therefore reasonable to find that he should have preserved recorded information related to the value of his interest in Preet.  *See e.g. Wachovia Bank, N.A. v. Carl Spitko, et al. (In re Spitko),* 357 B.R. 272, 308-309 (Bankr. E.D. Penn. 2006) (collecting cases discussing denying debtors discharges who are heavily invested in closely held corporations for their failures to produce and/or record information, because it may be the best measure of the debtor's financial condition) (quoting *In re Ross,* 1999 WL 10019 (Bankr. E.D. Penn. Jan. 4, 1999)).

The Debtor testified at the 2004 Examination that Preet does not record its income on a daily basis and that Preet only puts enough money into the bank to meet its liabilities.  (Dep. Tr. 27.)  He testified that "sometimes [his] children take care of it." *Id.*  And that his oldest son tells the accountant about the sales in order to figure out the taxes. *Id.* at 28.  While the Court notes that the books and records of Preet Gourmet might not need to be sophisticated, some business records sufficient to determine the value of the Debtor's interest in the business are necessary. *See Donald Lassman v. Paul Mahfouz (In re Mahfouz),* 529 B.R. 431 (Bankr. D. Mass. 2015) (where the debtors failed to produce receipts or ledgers of payments that were allegedly recorded in a notebook that went missing, but the court found that even with its existence, it would not have been adequate information for the Trustee to ascertain the full financial condition of the closely-held corporation, and thus a denial of discharge was warranted under §727(a)(3)); *Rodney Tow v. David Henley (In re Henley)*, 480 B.R. 708, 782 (Bankr. S.D. Tex. 2012) (where the debtors' excuse that lost and missing documents evidencing their financial condition, including the records indicating the financial information of two closely held businesses made it impossible for the trustee to determine their financial condition and paired with their financial sophistication, justified the denial of their discharge under §727(a)(3)).  The Court does not find

it credible that quarterly sales tax statements, and the tax returns for Preet Gourmet, reporting $216,579 in gross revenues, $81,639 in costs of goods sold, $43,450 in rental payments, and $5,857 in shareholder distribution to the Debtor, were prepared by an accountant without some underlying cash ledger or some other recordation of cash receipts and expenses, a lease agreement or evidence of rental payments.  The Debtor failed to keep or preserve those records and this is a basis to deny the discharge under §727(a)(3).[6]

Second, the Debtor did not keep or preserve personal financial records sufficient to allow the Trustee to assess his financial condition.  Specifically, it appears that the Debtor only provided the Trustee with various copies of his State and Federal Tax Returns.  On his amended schedules, the Debtor identified his interest in a gas station as well as a life insurance policy, and to this Court's knowledge did not produce any records to the Trustee from which the Trustee could value his interest in those assets.

The Debtor provided no justification for his failure to keep or preserve these documents. At trial, the Debtor had the opportunity to explain his lack of adequate recordkeeping, but chose not to testify.  The Court will note that in his answer to the complaint, the Debtor asserted that he "could not furnish all the information as he did not have all the information." (ECF No. 4 at ¶11), and that he ". . . is in the process of collecting all the paperwork. . . .") (*Id.* at ¶12).  The Debtor also asserts that he "has serious psychological issues, including loss of memory, Attention Deficiency Disorder, etc." but offered nothing in support of these allegations.  (ECF No. 22). However, absent any admissible evidence of same, the Court cannot find any justification for a Debtor, who is a one-third owner in an operating business, who was listed as "President" on the

---

[6]    The Defendant's Exhibit H, email exchanges between counsel for the Debtor and counsel for the Trustee, also shows that the Debtor lost the corporate kit for Preet Gourmet, and he could not locate the shareholder agreement.  (Defendant Ex. H.)

corporate tax returns, and who derives his income from the business, not to keep and preserve

some recorded information relating to the value of his interest in that corporation.

Therefore, based on the Debtor's failure to keep and preserve documents necessary to

establish the financial condition and business transactions of the Debtor, the Debtor's discharge

will be denied pursuant to §727(a)(3).

### D)  Denial of Discharge under 11 U.S.C. §727(a)(2)(A) and (B).

11 U.S.C. §727(a)(2) provides:

> The court shall grant the debtor a discharge, unless –
>> (2) the debtor, with the intent to hinder, delay, or defraud a creditor or an officer
>> of the estate charged with custody of property under this title, has transferred,
>> removed, destroyed, mutilated, or concealed, or has permitted to be transferred
>> removed, destroyed, mutilated, or concealed –
>>> (A) property of the debtor, within one year before the date of the filing of
>>> the petition; or
>>> (B) property of the estate, after the date of the filing of the petition;

The Trustee has the burden to prove that, with fraudulent intent, the debtor acted to

transfer or conceal property under §727(a)(2). *Republic Credit Corp. v. Boyer (In re Boyer)*, 328

Fed. Appex. 711, 714 (2d. Cir. 2009).  Because intent is rarely displayed through clear and direct

proof, courts look to the 'badges of fraud' for indirect proof of intent. *United General Title

Insurance v. Kranasos (In re Kranasos)*, 561 B.R. 316, 323 (E.D.N.Y. 2016); *see also Salomon

v. Kaiser*, 722 F.2d 1574, 1582 (2d Cir. 1983).  Badges of fraud include (1) the lack or

inadequacy of consideration; (2) the family, friendship or close associate relationship between

the parties; (3) the retention of possession, benefit or use of the property in question; (4) the

financial condition of the party sought to be charged both before and after the transaction in

question; (5) the existence or cumulative effect of a pattern or series of transactions or course of

conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits

by creditors; and (6) the general chronology of the events and transactions under inquiry.  "This

list is not exhaustive and the party objecting to discharge need not establish the presence of all of those 'badges of fraud' in order to raise a presumption of intent to defraud." *Nicholas F. Pisculli v. T.S. Haulers, Inc., (In re Pisculli)*, 426 B.R. 52, 66 (E.D.N.Y. 2010), aff'd, 408 F. App'x 477 (2d Cir. 2011).

To prove his case under §727(a)(2)(A), the Trustee must show an act of transfer, removal, destruction, mutilation or concealment during the one year period before the bankruptcy. *In re Boyer,* 328 Fed.Appex. at 714. The Complaint alleges, under §727(a)(2)(A), that the "Debtor failed to accurately disclose and therefore conceal[] his property with the intent to hinder, delay or defraud . . the Trustee and the Court, within one year before the date of the filing of the petition." (Complaint ¶26.) Section 727(a)(2)(B) requires the concealment of "property of the estate *after the date of the filing of the petition*." 11 U.S.C. §727(a)(2)(B) (emphasis added). Under §727(a)(2)(B), the Complaint alleges that the "Debtor continues to use Preet to conceal property of the estate from his creditors." (Complaint ¶30.)

The Court finds that the facts of this case warrant denial of discharge under §727(a)(2)(B), but not §727(a)(2)(A). The omission of the Debtor's interest in Preet Gourmet and other assets from his petition as originally filed, and the Debtor's failure to file amended schedules adding those assets until three months post-petition, and then only after repeated reminders from the Trustee, amounts to the concealment of property of the estate after the filing of the petition. *See* §727(a)(2)(B). In applying the *Kaiser* badges of fraud, the Court finds that because the Debtor's interest in Preet Gourmet was by no means an insignificant or valueless asset (the Debtor derived his income from Preet Gourmet, and his testimony was that the business was important to him), and because of the Debtor's subsequent unwillingness to cooperate with the trustee in disclosing documentary information relevant to determining the

value of the Debtor's interest in Preet, and because the Debtor continues to hold and benefit from

his interest in Preet, a finding that the Debtor had the requisite intent to hinder, delay or defraud

the trustee is warranted under §727(a)(2)(B).  *See Estes v. Anglin*, No. 2:14-CV-994-SLB, 2015

WL 1279746, at \*6 (N.D. Ala. Mar. 20, 2015) (finding that omission of a potential insurance

claim for a stolen necklace was property of the estate which was concealed when the debtor filed

her bankruptcy case and thus the bankruptcy court properly denied her discharge pursuant to

§727(a)(2)(B)); *Candy Royer v. David W. Smith (In re Smith)*, 278 B.R. 253, 258 (Bankr. M.D.

Ga. 2001) (finding that the omission on the bankruptcy petitions amounted to a prima facie case

that there was concealment, however the debtor overcame the burden by justifying his omissions

of valueless assets).

In this Court's view, concealment of property of the estate post-petition, §727(a)(2)(B), is

not the same as concealment of property of the debtor pre-petition, §727(a)(2)(A).  The Trustee

has not alleged any *pre-petition* conduct by the Debtor sufficient to warrant denial of the

discharge under §727(a)(2)(A).  *But see Tranche 1 (SVP – AMC) Inc., ect. v. David Relito Tan*

*(In re Tan)*, 350 B.R. 488, 495 (Bankr. N.D. Cal 2006) (finding the debtor's omission of his

interest in various companies was not justified by the excuses the debtor made and found that his

omissions and the debtor's fraudulent intent sufficient to deny his discharge under §727(a)(2)

and (a)(4)); *Milton G. Friedman, Trustee v. Ludwig Kaiser (In re Kaiser)*, 94 B.R. 779, 781

(Bankr. S.D. Fla. 1988) (denying the debtor's discharge pursuant to §727(a)(2)(A) and (a)(4)(A)

because the debtor failed to list his interests in two auto parts stores and disclose proceeds that

the sales produced on his petition and thus found it was an "intentional and calculated attempt to

conceal assets from the trustee").

For all of these reasons, judgment will enter in favor of the Plaintiff under §727(a)(2)(B), but not §727(a)(2)(A).

## CONCLUSION

For the foregoing reasons, judgment is granted in favor of the Trustee as to §§727(a)(4)(A), (a)(4)(D), (a)(3), and (a)(2)(B), and the Debtor's discharge will be denied.  The Court shall enter judgment consistent with this Memorandum Decision forthwith.

**Dated: Central Islip, New York**
**May 31, 2017**

**Robert E. Grossman**
**United States Bankruptcy Judge**